**UNITED STATES of America (ex relatione) Christopher J. DATTOLA (ex parte), Plaintiffs,**

v.

**NATIONAL TREASURY EMPLOYEES UNION et al., Defendants.**

**Christopher J. DATTOLA, an Individual, and Chris Al Inc., a corporation, Christopher J. Dattola, President, Plaintiffs,**

v.

**KEYSTONE BANK et al., Defendants.**

**Christopher J. DATTOLA, an Individual, and Chris Al Inc., a corporation, Christopher J. Dattola, President, Plaintiffs,**

v.

**Eugene L. COON, Sheriff, et al., Defendants.**

Civ. A. Nos. 78–840, 79–385 and 79–899.

United States District Court,
W. D. Pennsylvania.

April 29, 1980.

Christopher J. Dattola, pro se.

## OPINION

DIAMOND, District Judge.

Plaintiff Christopher J. Dattola filed the three captioned pro se complaints charging over 100 defendants with violations of several constitutionally protected rights and literally scores of criminal statutes. In the aggregate the complaints consist of approximately 100 handwritten pages of rambling, largely ambiguous verbiage. Presently before the court are motions to dismiss filed on behalf of nearly all of the defendants in each of the three actions. While the motions assert various bases, those most commonly raised are the statute of limitations, failure to state a claim, immunity, lack of jurisdiction, and noncompliance with the requirement of Rule 8(a), Fed.R.Civ.P., of a short and plain statement of the claim. Oral argument on all motions was had on February 8, 1980. For the reasons set forth below, we will grant those motions to dismiss which are based on the failure of the complaint to comply with Rule 8(a).

In view of our disposition of these cases, a brief description of the complaints is necessary. In Civil No. 78–840 plaintiff names himself and the United States of America as parties plaintiff; the former being denominated "ex parte", the latter "ex relatione."[1] The complaint names 98 defendants, some of whom are never mentioned in the body of the complaint, and asserts claims accruing as early as 1962 and as recent as 1978. The roster of defendants includes bar associations, banks, attorneys, police officers, federal employee unions, judges, county commissioners, and law firms. The jurisdictional allegation of the complaint comprises four full pages of the pleading and lists as its bases no fewer than 70 sections of Title 18, U.S.C. Those sections range in subject-matter from the conveyance of false information regarding motor vehicles, 18 U.S.C. § 35, to attempted murder, 18 U.S.C. § 1113.

Perhaps the clearest manifestation of the unwieldiness of the complaint is found in its statement of claims. The complaint, autobiographical in form, consists of a virtual recitation of plaintiff's interaction with the "system" from 1962 to 1978. The claims are made up of a group of totally unrelated, often patently frivolous, allegations laced with non-sequiturs and misplaced legalese. Our rough count reveals no less than 12 distinct types of claims-based transactions, many of which contain several subclaims. Those claims-based transactions include, inter alia, such diverse and unrelated matters as a series of tax liens asserted from 1962 to 1973 against plaintiff and certain corporations of which he had a controlling interest; two arrests of plaintiff on criminal charges; plaintiff's commitment to a state hospital for the mentally ill; the conduct of a civil suit in which plaintiff was sued by one of his former business associates; and the failure of the United States Postal Service to deliver mail to the proper addressee.[2]

1. At oral argument we ruled that plaintiff had no standing to sue on behalf of the United States and dismissed his action to that extent.

2. Plaintiff also asserted other claims. These relate to his efforts to obtain the proceeds of a fire insurance policy as the result of a fire which occurred in 1970; the validity of certain judgments entered in 1971 and 1972 against plaintiff by two banks; plaintiff's efforts to resolve a fee dispute with former counsel through the Allegheny County Bar Association and the Disciplinary Board of the Pennsylvania Supreme Court; plaintiff's request to the Borough Council of Springdale, Pennsylvania, the Allegheny County District Attorney's Office, and the Department of Justice of the Commonwealth of Pennsylvania, to investigate an alleged conspiracy between the police forces of Springdale Borough and Allegheny County to

Plaintiff's claims are typically presented by setting forth a factual narrative of several pages, usually covering several unrelated defendants and incidents, and concluding with a sentence such as this: "At this point of time; the plaintiff, Christopher J. Dattola makes the following allegations against the defendants herein named by reason: 18 U.S.C.A. § 35: 18 U.S.C.A. § 241: 18 U.S.C.A. § 242: 18 U.S.C.A. § 286: 18 U.S.C.A. § 287: 18 U.S.C.A. § 891: 18 U.S.C.A. § 892: 18 U.S.C.A. § 894: 18 U.S.C.A. § 1002: 18 U.S.C.A. § 1341: [18 U.S.C.A. § 1957:] 18 U.S.C.A. § 2384: and for any other reason whence so ever." (¶ 27).[3]

It is not necessary to describe the two subsequent suits, Civil Nos. 79–385, and 79–899, in detail. Suffice to say that while those complaints are more limited in length,[4] scope,[5] and number of defendants sued,[6] they are no less defective in form and substance; i. e., they assert unrelated, often frivolous, claims in a manner which totally ignores the requirements of the Rules.

Instead of summarily dismissing the complaints as urged by the defendants, we scheduled oral argument in the hope that plaintiff would be able to do orally that which he was unable to do in writing; namely, to state with some degree of clarity the wrongs of which he was complaining.[7]

Unfortunately, although we gave plaintiff more than ample opportunity, this never happened. On three specific occasions during oral argument we outlined the specific defects of plaintiff's complaints and offered him the opportunity to correct them. (pp. 21, 32–36). But on each occasion plaintiff responded with vague references to Rule 2, Fed.R.Civ.P.[8] Despite repeated efforts, we simply were unable to gain any insight into the three complaints; they remained as vague and unwieldy after oral argument as they had been prior thereto.

Although stating several times that in their present form the actions most likely would be dismissed,[9] (pp. 33–36, 41, 43), the court nevertheless gave plaintiff one further opportunity to salvage his claims by granting him ten days within which to file amended pleadings. In the process, the court repeatedly urged the plaintiff to seek legal assistance, (pp. 35, 43, 46, 50). Although plaintiff indicated to the court that he would amend his pleadings, (p. 47) to this day, this has not been done.[10] Thus, we must rule on the pleadings in their original form.

■ It is of course well-recognized that complaints drawn by pro se litigants are held to a less stringent standard than those

somehow injure plaintiff; and the plaintiff's attempt to procure his medical records from Fairview State Hospital.

3. When preceded by "'"'" the number in parenthesis refers to the paragraph in plaintiff's complaint. When preceded by a "p.," the numbers refer to pages in the transcript of the February 8, 1980, hearing.

4. Civil Nos. 79–385 and 79–899 are 24 and 18 handwritten pages respectively.

5. While both 79–385 and 79–899 involve numerous unrelated transactions, unlike 78–840 they are dominated by a few matters. In 79–385 those matters are plaintiff's default on a judgment note with a particular bank and his defense of a breach of contract suit brought by a former business associate, and in 79–899 plaintiff's eviction from his personal and business residences.

6. Nos. 79–385 and 79–899 involve 18 defendants each.

7. Our records indicate that 24 attorneys were present, representing the majority of the defendants of record.

8. It is apparent that plaintiff has a misguided notion of the significance of Rule 2. For, in addition to the above, he also relied on it in response to our queries concerning possible recusal (p. 22) and the existence of jurisdiction over these matters (p. 32). In fact, throughout the entire proceeding plaintiff seemed intent upon tracing the genesis of Rule 2 (pp. 20, 22–24, 30, and 32 to 39). Indeed, the majority of the time accorded plaintiff appeared to have been utilized by him in that endeavor.

9. See more detailed discussion at p. 7.

10. The only supplement to these pleadings has been plaintiff's unsuccessful attempt to file a habeas corpus petition on behalf of an inmate at a federal prison in the context of Civil No. 78–840.

drawn by legal counsel. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Fischer v. Cahill,* 474 F.2d 991 (3rd Cir. 1973); *Marshall v. Brierley,* 461 F.2d 929 (3rd Cir. 1972). Obviously, there must be a limit to the indulgence of the law and the resultant imposition on the defendants in these suits, and complaints have been dismissed under Rule 8(a) where they were found to be "a labyrinthian prolixity of unrelated and viturperative charges that defied comprehension," *Prezzi v. Schelter,* 469 F.2d 691 (2nd Cir. 1972); "a euphoric harassment of [the defendants] . . . [t]otally obfuscated . . . [i]mpossible for any party or court to understand plaintiff's alleged claim or damage," *Koll v. Wayzata State Bank,* 397 F.2d 124 (8th Cir. 1968); "confusing, ambiguous, redundant, vague and, in some respects, unintelligible," *Wallach v. City of Pagedale,* 359 F.2d 57 (8th Cir. 1966); and "so verbose, confused and redundant that its true substance, if any, is well disguised," *Corcoran v. Yorty,* 347 F.2d 222 (9th Cir. 1965).

Perhaps most in point from this line of cases is Judge Sirica's ruling in *Brown v. Califano,* 75 F.R.D. 497 (D.C.1977). In *Brown* the court had before it the latest in a series of law suits filed by an individual against various public and private individuals and organizations. The court's description of the complaint in *Brown* suggests that it bears a definite similarity to those in the instant suits.

> Plaintiff alleges widespread misconduct by defendants actionable variously under the Constitution, numerous federal statutes and nearly all theories of recovery known to the common law. In eight rambling counts, plaintiff claims "fraud, psychiatric, medical, educational repressions, harassments, and intimidations, nuisances, tortures, aggravations, malpractices, entrapments, counterproductivity; invasions and violations of personal privacy; commitments and imprisonments, brutality, detentions, false personation, and false pretenses, false arrests,

political surveillances and monitoring; tormentations, duress, distress, tensions, persecutions; wrongful death and attempted homicide by euthanasia; for reverse discrimination: for damages, injuries and conversions" and so on, and so forth. *Brown,* supra, 498.

After reviewing the appropriate authorities, including the obligation of liberal construction imposed by *Haines v. Kerner,* supra, Judge Sirica dismissed the complaint, concluding that "the pleading [was] a confused and rambling narrative of charges and conclusions concerning numerous persons, organizations and agencies. . . . [containing] an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments." *Brown,* supra, 499.

As in *Brown* and the other above-cited cases, we believe that plaintiff's complaints in these actions, when measured against the requirements of Rule 8(a), have exceeded the outer limits of society's obligation to pro se litigants. The purpose of the Rule 8(a) requirement of a plain and simple statement of the claim is to give the defendant fair notice of the charges so that a meaningful response to the pleading may be filed. 2A Moore's p. 8–103. There is virtually no way that the defendants here can file meaningful replies to these complaints. To this date, the court, even after several readings, simply cannot decipher them. They appear to be even more obfuscated than the *Brown* excerpts quoted above. For this reason the complaints will be stricken for their gross noncompliance with Rule 8(a). To do otherwise and permit plaintiff to litigate these claims would, in our judgment, constitute an abuse of the defendants and the judicial system. Since plaintiff has ignored opportunities to amend his pleadings, this dismissal will be final and with prejudice.

In conclusion we observe that even had plaintiff's complaints survived the Rule 8(a)

attack, they would have been emasculated by other motions, which, because of our Rule 8(a) ruling, we need not now dispositively address.

We note initially the likely violation of Rule 20 concerning the proper joinder of parties defendant. It is obvious that the alleged liability of most of these defendants does not arise out of the same transaction or series of transactions. Secondly, it is clear that many, if not most, of the claims are barred by the statute of limitations, since they are addressed to matters which allegedly occurred 10 to 15 years ago. Third, in many instances this court is obviously without jurisdiction to hear plaintiff's claims. For example, nearly 20 pages of the complaint at Civil No. 78–840 are directed to the validity of certain state tax liens levied against the plaintiff or his business. These matters are clearly not within this court's jurisdiction. And, finally, much of Civil Nos. 79–385 and 79–899 consists of direct attacks on judgments or rulings issued by certain state courts in other proceedings. These are definitely matters for the Pennsylvania appellate courts. But as suggested above, we need not rule on these matters at this time, for the complaints will be dismissed under Rule 8(a).[11]

---

11. On praecipe of plaintiff, the Clerk, pursuant to Rule 55(a), Fed.R.Civ.P., entered default against several of the defendants. Judgment has not been entered on the defaults. We find that our disposition of the motions under Rule 8(a) prior to the entry of judgment on the defaults is sufficient cause for the court, *sua sponte*, to set aside the defaults under Rule 55(c) and also to dismiss the complaints as to those defendants.